HENRY HOUGHTON *vs.* MILFORD PINK GRANITE COMPANY.

Suffolk.    March 7, 8, 1898. — May 23, 1898.

Present: ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Broker — Commission — Introduction of Customer to Principal.*

A broker is not entitled to a commission for services in giving information which enables his principal to find a customer, where he is in no way instrumental in bringing his principal and the customer together, and all that he does is tardily to give to the principal a part of the information which the principal has already received from other sources; and the fact that the principal in sending his estimates of prices of his goods to a number of general contractors also sends a copy to the broker, which is accompanied by a letter, stating that he includes one per cent commission in the figures for him, and the fact that the broker afterwards does nothing further to earn his commission, are to be interpreted as an offer for the future, and not an admission of existing liability.

CONTRACT, to recover a commission as broker for alleged services in giving information to the defendant which enabled it to find a customer for its goods.    At the trial in the Superior Court, before *Hammond*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions.    The material facts appear in the opinion.

*J. K. Berry*, for the defendant.

*G. C. Coit*, for the plaintiff.

HOLMES, J.    This is an action to recover a commission for alleged services in giving the defendant information which enabled it to offer its granite to a customer for use in a building. The plaintiff had asked to represent the defendant in New York, and had been refused, but had been told that if he could pick up business which the defendant did not know about, it would allow him something.    In 1895, Messrs. McKim, Mead, and White, New York architects, were employed to prepare plans and specifications for a memorial building at West Point.    In the latter half of March the defendant was informed of this, and urged the architects to make the specifications in the alternative, so as to admit of the substitution of Milford pink granite for marble where only marble had been contemplated.    This was done by an addendum to the specifications, which was furnished

to the defendant by the architects about April 1.   On April 12, New York granite brokers wrote to the defendant for a bid. The next day the defendant declined giving them one, on the ground that it did not need their assistance.   On April 16, the plaintiff for the first time wrote to the defendant that there was an opportunity to sell its stone in connection with this building, enclosing a sheet showing the quantities of granite required for the base of the building, but seems to have paid no attention to the alternative specifications for the superstructure already in the defendant's hands.

Before he wrote, he had met contractors at the architects' office, and had told them that he was figuring on the granite for the defendant.   Among those whom he met was a representative of the Probst Construction Company, which ultimately got the contract for building, and made a sub-contract with the defendant.   But there was no evidence that the plaintiff sent this company any estimates for the defendant's granite, or that he was in any way instrumental in bringing the Probst Company and the defendant together.   On May 3 the plaintiff wrote to the defendant, asking what it was going to do about furnishing granite for this building.   The defendant replied that it was estimating on the granite work for several contractors, and that when its bid was prepared it would send the plaintiff its figures. The plaintiff then offered a list of contractors, and the defendant, before May 11, declined the offer, on the ground that it already had one.   On May 11, 1895, the defendant sent a typewritten letter, addressed in writing to the plaintiff, containing its offer for base and superstructure.   Similar letters were sent to all the general contractors who were figuring on the building. The letter to the plaintiff was accompanied by another, saying, "We include one per cent commission in these figures for you." The plaintiff replied, thanking the defendant, and did nothing further.   In June, 1895, all the bids for the construction of the building were rejected, and a new call for bids was issued in December of the same year.   The specifications differed from the former, providing that the whole building should be of pink, or other light colored granite, and allowing selection from a large variety of granites.   In this way the chance for competition was increased.   Neither the plaintiff nor the defendant

did anything further until after the time for opening the new bids, January 13, 1896, when one of the architects got from the defendant the amount of a new bid which it had submitted on the granite, gave it to the Probst·Construction Company, and urged it to make a sub-contract with the defendant. After correspondence lasting a month, this was done.

On the foregoing facts, we do not see why the case should not have been taken from the jury. We do not think that the letter of May 11, saying that the figures included one per cent commission for the plaintiff, properly could be held to constitute a waiver of the original stipulation that information must be about matters which the defendant did not know about before, if it was to be paid for. But at all events the defendant could not waive the necessity for a consideration to a simple contract. We are unable to discover anything done by the plaintiff which can be supposed to have been the conventional inducement for a promise on the defendant's part, or, conversely, any offer by the defendant to pay for anything which the plaintiff did.

It appears to us, on the whole case, that all that was offered to the plaintiff was the chance of earning a commission as a broker by introducing a customer, or giving information of such sort as should bring about a bargain. Very likely it is true, as was testified, that a broker of this kind can do little beside introducing the parties, and that persuasion is no part of his business or duty. But we see no reason to admit that he earns a commission unless he brings about a contract by introduction or information, and we see no sufficient evidence that the defendant specially undertook to pay the plaintiff for anything less. On the contrary, the fair inference is that, when beset by his urgency, it informed him that, if he could earn money as a broker, he was at liberty to do so, and promised him nothing more.

It appears to us, also, that all that the plaintiff did was, by his letter of April 16, tardily to give the defendant a part of the information which it already possessed.

When on May 11 the defendant spoke of a commission for the plaintiff, the natural interpretation, to our mind, is in accordance with the defendant's testimony that it was an offer for the future, not an admission as to the past, and nothing was done

to earn the commission after that date.   But however the letter be interpreted, what the defendant offered, and what the plaintiff did, is all before us, and we think it plain that the plaintiff did nothing for which the defendant offered to pay.

*Exceptions sustained.*